# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| IVANTI, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>STAYLINKED CORPORATION,<br><br>        Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:19-cv-00075-DB<br><br>District Judge Dee Benson |

Before the court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 6. The motion has been fully briefed by both parties, and the court has considered the facts and arguments set forth in those filings. Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the court elects to determine the motion on the basis of the written memoranda and finds that oral argument would not be helpful or necessary. DUCivR 7-1(f).

## FACTUAL BACKGROUND

The following facts are taken from Ivanti's complaint. They are accepted as true and viewed in the light most favorable to the plaintiff as the non-moving party. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

Since the early 2000s, Ivanti and StayLinked have been in direct competition in the market for terminal emulation products. Complaint ¶¶ 13-18, Dkt. No. 2. Over the years, StayLinked changed their products to resemble Ivanti's. *Id.* ¶ 14. StayLinked hired at least six

Ivanti employees and leveraged their familiarity with Ivanti to gain access to Ivanti's technologies and strategies. *Id. ¶* 16.

In 2012, at the request of its largest client, Ivanti began developing a new terminal emulation product initially called Smart TE. *Id.* ¶¶ 20-22. Jay Cichosz was then the Vice President of Products and Marketing for Ivanti and was "very familiar" with the development of the Smart TE product. *Id.* ¶ 23. In this role, Cichosz had access to confidential information related to the product. *Id.* ¶¶ 24-25. In April 2014, when Ivanti's Smart TE prototypes had been developed and were being tested, Cichosz left Ivanti to join StayLinked as its Vice President of Marketing and Business Development. *Id.* ¶ 30. Ivanti's Smart TE product was renamed Ivanti Velocity and launched in February 2015. *Id.* ¶¶ 31-32.

Less than a year after Ivanti's product was launched, StayLinked launched its own terminal emulation product in February 2016 under the name SmartTE. *Id.* ¶¶ 35-36. To develop this product, StayLinked relied on confidential Ivanti information obtained and shared by Cichosz. *Id.* ¶¶ 41-43. StayLinked used this new product to compete directly with Ivanti for key supply chain customers. *Id.* ¶¶ 45-46. SmartTE became a centerpiece of StayLinked's supply chain business and helped them increase their market share significantly. *Id.*

The following year, around September 2017, StayLinked began to recruit Ivanti's Asia-Pacific Territory Manager, Stephen Shea. *Id.* ¶ 48. Soon thereafter, Shea resigned from Ivanti, claiming that he intended to take time off to care for his ailing parents in California. *Id.* ¶ 50. Shea then joined StayLinked without returning sensitive and confidential information he had acquired while working at Ivanti. *Id*. ¶¶ 51. Within a month of his resignation, he started recruiting Ivanti's Asia-Pacific customers to join StayLinked. *Id*. ¶ 52. In doing so, Shea

misappropriated and transferred confidential Ivanti documents and information. *Id.* ¶ 56-57. Ivanti obtained a stipulated injunction in a case against Shea (*See* Case No. 2:18-cv-00092), which prohibited Shea from competing with Ivanti in the Asia-Pacific region for six months. *Id.* ¶ 54. This period was extended after Shea failed to comply with that requirement. *Id.*

StayLinked's misappropriation of Ivanti's confidential information resulted in financial gains by StayLinked and commensurate financial losses by Ivanti. *Id.* ¶¶ 45-46, 60. The misappropriated information included confidential strategies, documents, and prototypes, and Ivanti took substantial steps to preserve the confidentiality of the information. *Id.* ¶ 63, 65.

On February 1, 2019, Ivanti filed suit in the United States District Court for the District of Utah alleging that StayLinked has violated Utah's Uniform Trade Secrets Act (UTSA) as well as the federal Defend Trade Secrets Act (DTSA). Dkt. No. 2. In the complaint, Ivanti also alleged that StayLinked engaged in tortious interference with Ivanti's business relations. *Id.* StayLinked moved to dismiss the complaint, arguing that (1) Ivanti's UTSA and DTSA claims relating to Cichosz are barred by the statute of limitations under those acts; (2) a portion of Ivanti's claims under the DTSA arose before the effective date of the statute; (3) Ivanti's tortious interference claims are barred by the UTSA and Utah case law; and (4) Ivanti's complaint does not set forth facts establishing the elements of its claims. Dkt. No. 6.

## **MOTION TO DISMISS STANDARD**

In considering a motion to dismiss pursuant to Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to the non-moving party. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Plaintiff must provide "enough facts to state a claim to

relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (2009). This court's role "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient." *Miller v. Glanz*, 948 F.2d 1526, 1565 (10th Cir. 1991). In doing so, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## **DISCUSSION**

StayLinked moves to dismiss the complaint on several distinct grounds. Each of these grounds is addressed below.

1) Statute of Limitations

Ivanti alleges that Cishosz violated the UTSA and the DTSA by misappropriating trade secrets after leaving Ivanti by helping StayLinked develop a new terminal emulator with innovations and enhancements similar to those of Ivanti's terminal emulator. Compl. ¶¶ 61-81. StayLinked claims that such a claim became ripe in 2014, when Cichosz left Ivanti to join a close competitor without returning confidential information. StayLinked's Motion to Dismiss at 5-7, Dkt. No. 6. StayLinked argues that Ivanti's claims have now expired under the statute's three-year limitation. *Id.* Ivanti responds that they had no knowledge that Cichosz would

misappropriate confidential information until the release of StayLinked's competing product in 2016. Ivanti's Opposition at 7-8, Dkt. No. 13.

Under precedent from the United States Court of Appeals for the Tenth Circuit, the statute of limitations on a trade secrets action begins to run "when the Ivanti has knowledge of sufficient facts from which a jury could infer misappropriation." *Chasteen v. UNISIA JECS Corp.*, 216 F.3d 1212, 1218 (10th Cir. 2000) (evaluating a Colorado statute materially identical to both the UTSA and the DTSA). In order to "start the clock," then, a plaintiff must have had "objectively reasonable notice" of misappropriation. Uniform Trade Secrets Act, § 6 cmt. The complaint alleges sufficient facts to support the inference that Ivanti did not have reasonable notice of any misappropriation until StayLinked's competing product was released in 2016. The claims related to Cichosz, then, do not violate the three-year statute of limitations.

2) Effective Date of DTSA Claims

StayLinked argues that Ivanti's claims related to Cichosz occurred before the effective date of the federal DTSA on May 11, 2016. Def.'s Mot. at 7-8. It argues further that any trade secrets acquired by Cichosz became public in 2015, when Ivanti's Velocity product was released. *Id.* Ivanti alleges, however, that many of the trade secrets acquired by Cichosz did not become public with the launch of Ivanti's product, and that StayLinked continued to use information from Cichosz "to undercut Ivanti in the supply chain marketplace." Ivanti's Reply at 9, Dkt. No. 14; Compl. ¶ 46.

The federal courts that have encountered the question have agreed that the DTSA applies to "continuing misappropriations that began prior to—but continued after—the DTSA's enactment." *See Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Grp.*, 2017 WL

1105648, at *4 (E.D. Pa. Mar. 24, 2017) (surveying four district court opinions and concluding that Congress intended the Act to apply to such instances). The important question, then, is whether Cichosz's misappropriation was alleged to have continued beyond the effective date of the DTSA. Ivanti alleges that Cichosz misappropriated confidential marketing data and pricing matrices that would not lose their secret status upon the release of the Velocity product, and that StayLinked continued to use that information after May 11, 2016. Compl. ¶¶ 25, 40-46. The complaint therefore alleges misappropriation that, if proven, is actionable under the DTSA.

3) Validity of Tortious Interference Claims

StayLinked argues that each of Ivanti's tortious interference claims either (1) lack a basis in "wrongful conduct" as that term has been defined by the Utah Supreme Court, or (2) are precluded by the UTSA. Def.'s Mot. at 16-21. The UTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." Utah Code Ann. § 13–24–8. The Utah Supreme Court has stated that inducement to breach a contract is not "wrongful conduct" sufficient to support a claim of tortious interference with economic relations. *C.R. England v. Swift Transportation Co.*, 437 P.3d 343, 354 (Utah 2019).

Ivanti alleges facts suggesting that StayLinked interfered with its economic relations by "unlawfully inducing" breaches of contract, "making and inducing false statements, and the use of protected, confidential information." Compl. ¶ 85. Ivanti has also alleged that confidentiality and non-competition are established industry-wide standards and that StayLinked was aware of these industry standards when it violated them through its interactions with Cichosz and Shea. Compl. ¶¶ 39, 54. StayLinked is correct that Ivanti's claims stemming from inducements to

breach a contract are foreclosed by the Utah Supreme Court's interpretation of "wrongful conduct," and that Ivanti's claims relating to the misappropriation of confidential information are foreclosed by the UTSA. Ivanti, however, has alleged additional wrongful conduct that does not fall into the aforementioned categories. Ivanti has specifically alleged that StayLinked's agents deceived Ivanti and Ivanti's customers. *Id.* ¶¶ 50-53. Ivanti's allegations also support an inference that StayLinked violated industry standards of non-competition and confidentiality by hiring Shea and Cichosz and leveraging their insider status for a competitive advantage. *Id.* ¶¶ 39, 49, 54. Ivanti therefore alleges facts supporting a plausible claim of tortious interference with economic relations.

4) Sufficiency of Factual Allegations in Complaint

As stated above, all well-pleaded factual allegations are, for purposes of this motion, accepted as true and viewed in the light most favorable to the non-moving party. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). StayLinked argues that, even given this deference, none of Ivanti's factual allegations support a plausible claim for relief under the UTSA or the DTSA. The Court will not here recite each of the allegations individually. Ivanti has alleged, however, that StayLinked misappropriated confidential customer lists, strategic documents, contracts, prototypes, and royalty reports. *See, e.g.,* Compl. ¶¶ 24-30, 56-58. The complaint furthermore sets forth the manner in which Ivanti derives value from the secrecy of that information and the reasonable efforts it took to maintain its secrecy. Compl. ¶ 29, 39, 65, 76. StayLinked may, through subsequent discovery, demonstrate that this information either does not qualify as a trade secret or was not misappropriated. At this stage, however, the factual allegations in the complaint are sufficient to survive a motion to dismiss.

5) Permanent Injunction

A permanent injunction is a remedy dependent entirely on Ivanti's success on the merits. It is not an independent cause of action and is therefore not the proper subject of a 12(b)(6) motion to dismiss.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss is hereby DENIED.

DATED this 24th day of September, 2019.

BY THE COURT:

Dee Benson
United States District Judge